[Civ. No. 12132.   Second Appellate District, Division Two.—May 29, 1939.]

ELSIE D. SCHRANK, Respondent, v. STERLING PRODUCTS COMPANY (a Corporation), Appellant.

Collins Mason, H. B. Cornell, Freston & Files and Ralph E. Lewis for Appellant.

Derthick, Cusack & Ganahl and William J. M. Heinz for Respondent.

WOOD, J.—In this action plaintiff recovered a judgment in the sum of $11,117.32, the amount found to be due as minimum royalties under an agreement whereby plaintiff gave defendant a license to manufacture and sell a device useful in sand papering and polishing. This device is referred to by the parties as a ''sander''.

The original owners of the patent, Drennon, Heinz and Ganahl, entered into an agreement in writing with Roscoe V. Porter and George S. Bean under date of March 18, 1933, whereby Porter and Bean were given an exclusive license to manufacture and sell the sander and Porter and Bean agreed to pay them the sum of $1.50 for each sander sold. The contract provided for the payment of attorney's fees in case it became necessary for the owners to commence action thereon and also provided that the licensees would pay a minimum royalty of $150 per month. It was also provided that the contract could not be assigned by the licensee without written consent of the owners and that an assignment with-

out the consent of the owners would work a forfeiture of the contract at the option of the owners.

Under date of April 14, 1934, Porter and Bean entered into an agreement in writing with defendant, whereby Porter and Bean gave defendant an exclusive license to manufacture and sell the sander and in which it was provided that defendant would pay to Porter and Bean the sum of seventy-five cents for each sander sold by defendant and in addition the sum of $1.50 for each sander sold, the sum necessary for Porter and Bean to pay under their agreement with the owners. Both contracts, the one dated March 18, 1933, and the one dated April 14, 1934, contain many provisions stated in detail which are different in many respects, but which for the purposes of this appeal it is not necessary to discuss. References to the earlier agreement are made in the second agreement, which sets forth, "a copy of which said license agreement is attached hereto, marked Exhibit I and hereafter referred to and made a part hereof". Plaintiff sues as the assignee of Porter and Bean.

The parts of the later agreement which bind defendant to pay royalties are found in paragraphs IX and X. Paragraph IX provides: "Sterling agrees: . . . (c) To pay to Licensors, on or before the 10th day of each and every month . . . any sums on account of minimum royalties required to be paid hereunder in accordance with the provisions hereinafter contained." Paragraph X provides: "It is Mutually agreed and Understood as Follows: (a) Should Sterling fail to pay to Licensors on August 10, 1934, a minimum royalty of one hundred dollars ($100.00) and beginning with September 10, 1934, a minimum royalty of one hundred fifty dollars ($150.00), for each and every month during the existence of this agreement, and an additional minimum royalty of four hundred fifty dollars ($450.00) for each and every quarter year, beginning with nine (9) months from the date of this agreement and continuing during the existence of this agreement, the Licensors may cancel this agreement by giving the Sterling (60) days notice in writing . . . "

Defendant makes a definite and clear agreement in paragraph IX (c) of the contract to pay such sums on account of minimum royalties as may be provided in subsequent portions of the contract. These sums are designated in paragraph X, the only place where the subject is treated. De-

fendant claims that paragraph X gives Porter and Bean the privilege of canceling the agreement upon defendant's failure to pay minimum royalties therein provided for but does not by its language obligate defendant to pay such royalties; that the payment of minimum royalties is entirely optional with defendant. If this contention should be sustained it would render nugatory the agreement to pay minimum royalties contained in paragraph IX (c), and also paragraph X (b), which provides for the termination of the agreement by defendant upon giving notice. Under defendant's argument the contract could be terminated by defendant by merely ceasing to manufacture or sell the sanders, the terms of the contract which set forth the manner of giving notice not having any binding effect. At the time of the making of the later contract the earlier contract was before the parties and was specifically referred to on certain points and attached as part of their agreement. Both parties knew that Porter and Bean were obligated to pay $1.50 for each sander sold with a minimum royalty of $150 per month. With this knowledge before them Porter and Bean gave defendant an exclusive license to manufacture and sell the sander by paying an additional seventy-five cents as royalty for each sander sold. It is not reasonable to contend that the parties intended that Porter and Bean would remain liable to the owners for the minimum royalty of $150 per month with no obligation on the part of defendant to pay any minimum royalty whatever and, indeed, to pay no sum whatever in case no sanders should be sold.

In determining the intention of the parties from their written contract, which we are required to do under the provisions of section 1639 of the Civil Code, the whole contract is to be taken together, so as to give effect to every part thereof if reasonably practicable. (Sec. 1641, Civ. Code.) The trial court correctly took the view that it was the intention of the parties, as expressed in paragraphs IX and X of the contract, to make defendant liable for the minimum royalties.

■ Defendant's contention that the trial court erred in awarding attorney's fees to plaintiff must be sustained. The earlier contract provided that the owners of the patent, Drennon, Heinz and Ganahl, could recover attorney's fees from Porter and Bean but no such provision appears in the contract made by Porter and Bean and defendant. Although

the original contract was attached to the later contract because of certain references thereto contained in the later contract, no language appears in the later contract which makes defendant liable for all the obligations of Porter and Bean to the owners of the patent or which makes defendant liable to pay attorney's fees to Porter and Bean in case action should be commenced to enforce the terms of the contract sued upon.

■ It is further contended by defendant that plaintiff may not recover because of the failure of Porter and Bean to obtain the written consent of the owners of the patent to an assignment of the license rights. Plaintiff argues not only that it was established that the consent of the owners had been obtained in writing but also that a failure to obtain such consent would not prevent a recovery. It is provided in paragraph XV of the agreement of March 18, 1933; "It is agreed that this contract shall not be assigned by Licensee without the written consent of the Owner, and that an assignment thereof without the consent shall at the option of the Owner work a forfeiture of this contract." It is expressly provided in the contract made by the owners that the owners had the option of forfeiting the contract in case of the making of an assignment without their consent. It is clear that any assignment made contrary to the provisions of paragraph XV of the earlier contract would be only voidable at the option of the owners and not void as defendant contends. No showing was made that the owners exercised their "option" to declare a forfeiture. It is not necessary, therefore, to pass upon the contention that consent in writing to the assignment was in fact obtained.

The judgment is modified by striking therefrom the sum of $479.14, the amount of the attorney's fees awarded, and as so modified it is affirmed. Neither party is to recover costs on appeal.

Crail, P. J., and McComb, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 27, 1939.